**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **PLAINTIFF** |
| **V.** | **CAUSE NO. 3:19-CR-50-CWR-FKB** |
| **OKANLAWAN O. NORBERT** | **DEFENDANT** |

**ORDER**

Before the Court are Defendant Okanlawan O. Norbert's Motion for Bond Pending Interlocutory Appeal, Docket No. 35, and Supplemental Motion for Bond, Docket No. 39. United States Magistrate Judge F. Keith Ball ordered Norbert detained on July 23, 2019, finding that he posed a flight risk. Docket No. 18. Norbert seeks review of the detention order in light of the grant of his Motion to Suppress, Docket No. 32, which is presently on interlocutory appeal, and constitutional concerns about the imminent effects of the COVID-19 pandemic. The Government opposes the motions.

The determination of whether a Magistrate Judge's order of detention should be amended or revoked is governed by 18 U.S.C § 3145. "When the district court . . . acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* and makes an independent determination of the proper pretrial detention or conditions for release." *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985) (citation omitted). "Reviewing a transcript of the detention hearing is an appropriate procedure to comply with that obligation." *United States v. Faulkner*, No. 3:09-CR-249-D2, 2010 WL 1541355, at *1 n.2 (N.D. Tex. Apr. 19, 2010); *see also United States v. York*, No. 4:09-CR-36, 2009 WL 1766798, at *1 (N.D. Miss. June 22, 2009).

"Section 3142(g) lists factors the judicial officer considers in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). These include:

> [1] the nature and circumstances of the offense charged, including whether the offense involves a narcotic drug;
>
> [2] the weight of the evidence against the person;
>
> [3] the history and characteristics of the person, including the person's character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> [4] the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.*; *see also* 18 U.S.C. § 3142(g).

The Government has the burden to prove by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community. *See* 18 U.S.C. § 3142(f)(2)(B). It must also prove by a preponderance of the evidence that Norbert "poses a serious risk of flight." *United States v. McConnell*, 842 F.2d 105, 110 (5th Cir. 1988).

The Court has reviewed the transcript of Norbert's detention hearing before Judge Ball on July 15, 2019, the evidence submitted at the hearing, Judge Ball's order of detention, and the present briefing.

The Court agrees with Judge Ball that the Government has failed to show by clear and convincing evidence that Norbert poses a danger to others in the community. A violation of § 922(g)(1), while serious, is not a crime of violence. *See United States v. Tadlock*, 399 F. Supp. 2d 747, 752 (S.D. Miss. 2005). While the weight of the Government's evidence in support of its case in chief was strong at the detention hearing, now that the evidence has been suppressed, the

Government's case is relatively weak.[1] Norbert was compliant with the arresting officers. And, while he does have a criminal history – including past probation violations – the bulk of the charges are from 1997 to 2002, when Norbert was in his late teens and early twenties. His most recent charge, prior to this case, is from nine years ago, and he was fully discharged from probation after three years. In summary, there is not clear and convincing evidence that Norbert will pose a danger to others if released.

The Government has also not persuasively shown that Norbert is a flight risk. *See Rueben*, 974 F.2d at 586. Norbert has previously served probation in this District successfully. He also has longstanding ties to this District. He has lived here for 17 years, five of which with his fiancée – who is the sole breadwinner – and her children who he co-parents as his own. Norbert also has a child from a previous relationship in this District. Norbert's history of substance abuse is concerning; however, this is mitigated by his commitment to attend Alcoholics Anonymous meetings. Accordingly, the Court is persuaded that an appropriate bond and conditions recommended by the United States Probation Office would be sufficient to ensure Norbert's appearance at the proceedings in this case.

The reality of COVID-19's inevitable introduction to the Madison County Detention Center – where Norbert is currently held[2] – further influences the Court's decision to allow Norbert's release on bond. As the Fifth Circuit recently noted, "our nation faces a public health emergency caused by the exponential spread of COVID-19, the respiratory disease caused by the novel coronavirus SARS-CoV-2." *In re Abbott*, No. 20-50264, Slip Op. at 3 (5th Cir. Apr. 7,

---

[1] The Government contends that there is an open question of whether suppressed evidence can be considered at a detention hearing, citing to *United States v. Leon*, 468 U.S. 897, 910 (1984). However, this Court need not step into the reach of the exclusionary rule. It is enough to observe the obvious about this case: that with Norbert's gun and statements, the Government has a strong case for conviction. Without that evidence, the Government is unlikely to prevail.

[2] The United States Marshals Service has a contract with the Madison County Detention Center for the housing and medical care of federal pretrial detainees.

2020). In barely over a month since the first COVID-19 related death in the United States, over 395,000 people have contracted the virus in the U.S. and more than 12,750 have died.[3] In Mississippi, there are over 2,000 total cases across the state and 67 deaths.[4] This is very concerning because the first reported Mississippi case was March 11, 2020, less than a month ago.[5] "Federal projections estimate that, even with mitigation efforts, between 100,000 and 240,000 people in the United States could die." *Abbott*, No. 20-50264 at 4 (citation omitted).

Incarcerated populations are uniquely susceptible to COVID-19 because "the most important strategy of physical distancing simply is not possible in prisons, jails, and detention centers."[6] We are already seeing the virus' impact at correctional systems across the country, like Rikers in New York or across the Federal Bureau of Prisons, where infection rates and coronavirus-related deaths are increasing and systems are having to take drastic measures.[7] There are already cases among staff members and the incarcerated here in Mississippi at the federal detention facility in Yazoo City, Mississippi.[8]

---

[3] *Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Apr. 8, 2020).

[4] *Coronavirus Disease 2019 (COVID-19)*, Mississippi State Department of Health, https://msdh.ms.gov/msdhsite/_static/14,0,420.html#caseTable (last visited Apr. 8, 2020).

[5] Sarah Fowler, *Coronavirus in Mississippi: 88 new cases, eight deaths reported Wednesday*, The Clarion Ledger (Apr. 8, 2020), https://www.clarionledger.com/story/news/2020/04/08/coronavirus-mississippi-new-cases-deaths-reported-april-8-wednesday/2963852001/.

[6] Letter from Harvard T.H. Chan School of Public Health and Harvard Medical School faculty to Massachusetts Governor Charlie Barker (Mar. 31, 2020), https://cdn1.sph.harvard.edu/wp-content/uploads/sites/2464/2020/03/HCSPH-HMS-Faculty-Letter-on-COVID-19-in-jails-3-31-20-FINAL.pdf; *see also United States v. Roeder*, No. 20-1682, 2020 WL 1545872, at *2 (3d Cir. Apr. 1, 2020) ("It goes without saying that prisons generally are crowded spaces and therefore are less than conducive to the practice of social distancing.").

[7] Ned Parker et al., *Spread of coronavirus accelerates in U.S. jails and prisons*, Reuters (Mar. 28, 2020), https://www reuters.com/article/us-health-coronavirus-usa-inmates-insigh/spread-of-coronavirus-accelerates-in-us-jails-and-prisons-idUSKBN21F0TM; *see also* Nicholas Chrastil, *Four confirmed coronavirus deaths at Louisiana federal prison*, The Lens (Apr. 2, 2020), https://thelensnola.org/2020/04/02/four-confirmed-coronavirus-deaths-at-louisiana-federal-prison/.

[8] *25 inmates, 3 staff members at federal prison in Yazoo City test positive for coronavirus*, WJTV (Apr. 7, 2020), https://www.wjtv.com/health/coronavirus/25-inmates-3-staff-members-at-federal-prison-in-yazoo-city-test-positive-for-coronavirus/.

Norbert has argued that his continued detention during the COVID-19 pandemic raises constitutional concerns. Pre-trial detainees like Norbert have a "constitutional right to be secure in [their] basic human needs, such as medical care and safety." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648 (5th Cir. 1996) (en banc). To determine whether that right has been infringed, the Court must inquire as to whether a particular condition or restriction of pretrial detention amounts to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Conditions or restrictions that are "reasonably related to a legitimate governmental objective" do not, without more, amount to punishment. *Id.* In ordinary circumstances, "ensuring the detainees' presence at trial . . . is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* However, COVID-19 presents "unprecedent circumstances now facing our society." *Abbott*, No. 20-50264 at 30.

On this record, it is a judgment call whether Norbert should remain confined before his trial. But, owing to a combination of the merits of the case against him, his ties to the community, and the extraordinary circumstances presented by COVID-19, the Court finds that release is warranted in this situation. Norbert's risk of flight is limited given the many "travel and commercial restrictions brought on by the COVID-19 virus" and the danger he would face should he leave his home. *United States v. Fellela*, No. 3:19-CR-79 (JAM), 2020 WL 1457877, at *1 (D. Conn. Mar. 20, 2020). The Fifth Circuit has already relied upon evidence showing that "an exponential increase in COVID-19 cases is expected over the next few days and weeks." *Abbott*, No. 20-50264 at 30–31 (citation omitted). "It is hard to imagine a more urgent situation." *Id.* at 31. Many have died terrible and solitary deaths from this illness, and that is before it

spreads like wildfire through our nation's prisons and jails.[9] Because home confinement with the restrictions noted above will accomplish Norbert's appearance at trial, there is no need to subject him to that risk over the coming weeks.

Accordingly, Norbert's motions are granted. The parties are directed to confer with one another, consult with the United States Probation Office, and then provide a proposed order of release to the Court by 12:00 PM on April 10, 2020.

**SO ORDERED**, this the 8th day of April, 2020.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[9] *See, e.g.,* Dr. Sanjay Gupta, *The mystery of why the coronavirus kills some young people*, CNN (Apr. 6, 2020), https://www.cnn.com/2020/04/05/health/young-people-dying-coronavirus-sanjay-gupta/index html.